IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

Kevin A. THOMAS,

    Plaintiff

v.

Thomas M. PICCIONE, et al.,

    Defendants.

Civil No. 13-425

**MEMORANDUM OPINION**

CONTI, Chief District Judge

## I. Introduction

This case arises out of a contentious and long-running custody dispute and support action between plaintiff Kevin Thomas and his ex-wife, defendant Holly Thomas.[1] The custody action concerns their son, "CJT," and is ongoing in Court of Common Pleas of Lawrence County, Pennsylvania. The complaint alleges that the judge presiding over these state-court actions, defendant Thomas Piccione, conspired with Holly Thomas, her parents, her attorney, and other court officials to rig the case against Kevin Thomas. For the reasons stated below, Judge Piccione is absolutely immune from the claims against him, and those claims are dismissed with prejudice. Furthermore, under the principles of comity and federalism articulated by the Supreme Court in *Younger v. Harris*,

---

1    This is not the first federal lawsuit spawned by this dispute. Kevin Thomas sued many of the same defendants and made many of the same allegations in a suit filed on October 24, 2011, and docketed as *Thomas v. Hodge*, Civil No. 11-1344. This case is still pending before this court. Not to be outdone, in August 2012, Holly Thomas brought a pro se civil rights complaint against Kevin Thomas, his attorneys, and the judge then hearing the case, docketed as *Thomas v. Thomas*, Civil No. 12-1187. She voluntarily dismissed the case two months later.

1

the court will not interfere with the pending state-court actions. The case will be stayed and administratively closed until the state actions are resolved.

Plaintiff Kevin Thomas filed a six-count complaint (ECF No. 1). Counts 1–3 seek compensatory and punitive damages under 42 U.S.C. § 1983 for a conspiracy to violate his constitutional right to fair and unbiased court proceedings. Count 4 seeks equitable relief ordering the recusal of Judge Piccione and a change of venue in the underlying custody case. Counts 5 and 6 seek damages for intentional infliction of emotional distress and abuse of process under state law.

Defendants Thomas Piccione and John Hodge are judges of the Court of Common Pleas of Lawrence County, Pennsylvania, and defendant Michael Occhibone is the Court Administrator for that court. These three defendants filed a Motion to Dismiss and Brief in Support (ECF Nos. 13, 14). Plaintiff filed a Brief in Opposition to this motion (ECF No. 37). Defendant Norman Barilla is an attorney and has represented defendant Holly Thomas in the underlying state litigation. Barilla filed a Motion to Dismiss for Failure to State a Claim (ECF No. 40). Plaintiff filed a Response in Opposition (ECF No. 53). Barilla later filed a Brief in Support of his motion (ECF No. 54). These motions to dismiss are ripe for decision. The remaining defendants are Holly Thomas and her parents, John and Dolores DiCola.

## II. Factual Background as Set Forth in the Complaint

The underlying custody action has been ongoing since 2004. In 2006, the case was transferred to Judge Hodge. (Compl. ¶ 7.) In October 2011, Kevin Thomas filed a pro se civil rights complaint in this court (*Thomas v. Hodge*, No. 11-1134) alleging that Deborah Shaw, Norman Barilla, John DiCola, Delores DiCola, and Holly Thomas conspired with Judge Hodge to "rig" the custody case against the plaintiff in violation of his federal civil rights.[2] (*Id.*) After the

---

2  Except for Deborah Shaw, all these defendants are also defendants in this case.

complaint was filed, Judge Hodge recused himself.[3] The custody case was then transferred to Senior Judge Eugene Fike. (Compl. ¶ 15).

Although Senior Judge Fike was assigned the custody action and support action, defendant Judge Piccione entered orders in those cases, allegedly at the direction of defendants Barilla and Occhibone. (Compl. ¶¶ 15–16.) Sometime after February 2012, motions intended for Senior Judge Fike were intercepted and "filtered" by Judge Piccone, while Holly Thomas's motions went directly to Senior Judge Fike. (Compl. ¶ 20.)

In August 2012, Holly Thomas filed a federal lawsuit against the plaintiff, his counsel, and Senior Judge Fike for conspiring to rig the family court proceedings against her. (Compl. ¶ 23.) This lawsuit was filed pro se, but defendant Barilla drafted the complaint. (Compl. ¶ 22.) Although Holly Thomas later voluntarily dismissed the suit, Senior Judge Fike recused himself from the support action. (Compl. ¶ 25.) Senior Judge Fike continued to preside over the custody action, but Judge Piccione, "with the aid and support of Judge Hodge, assumed control" and began presiding over that case in September 2012, with the apparent acquiescence of Senior Judge Fike. (Compl. ¶ 27.)

The complaint details the "grossly prejudicial behavior" of Judge Piccione in handling the custody action between September 2012 and January 2013. (Compl. ¶¶ 28–58.) The laundry list of alleged abuses include that Judge Piccione

- refused to recuse himself or permit a change of venue (Compl. ¶ 28),
- heard several protection from abuse orders in a matter contrary to the applicable rules by not allowing contemporaneous cross-examination (Compl. ¶ 33) and continually postponing hearings (Compl. ¶ 34–35),
- deferred having a hearing on an emergency petition for change of custody for more than eight months (Compl. ¶¶ 38–41),

---

3   The claims against Judge Hodge in the 11-1344 action were dismissed with prejudice on May 29, 2012, due to absolute judicial immunity.

- refused to hold John DiCola in contempt for violating the court's order that he not attend custody exchanges and changed the order to allow John and Delores DiCola to attend the exchanges (Compl. ¶ 43),

- refused to enforce a subpoena issued by the plaintiff (Compl. ¶ 45),

- attempted "to misconstrue or alter the record" (Compl. ¶ 46),

- lied about scheduling options (Compl. ¶ 48),

- refused to rule on sanctions (Compl. ¶ 49),

- intimidated plaintiff's minor child, CJT (Compl. ¶ 50), and

- ignored the divorce case and failed to make any rulings or schedule any hearings (Compl. ¶ 55).

The complaint alleges in broad terms that the other defendants conspired with Judge Piccione, but it contains few facts to support such an inference.

## III. Standard of Review

A motion to dismiss tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a motion to dismiss, the court is not opining on whether the plaintiff will be likely to prevail on the merits; rather, when considering a motion to dismiss, the court accepts as true all well-pled factual allegations in the complaint and views them in a light most favorable to the plaintiff. *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002). While a complaint does not need detailed factual allegations to survive a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss, a complaint must provide more than labels and conclusions. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A "formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Factual allegations must be enough to raise a right to relief above the speculative level" and "sufficient to state a claim for relief that is plausible on its face." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Id.* (quoting *Twombly*, 550 U.S. at 556–57) (internal citation omitted). Two working principles underlie *Twombly*. *Id.* First, with respect to mere conclusory statements, a court need not accept as true all the allegations contained in a complaint. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555.)  Second, to survive a motion to dismiss, a claim must state a plausible claim for relief. *Id.* at 679. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*  "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'— 'that the pleader is entitled to relief.'" *Id.* (quoting FED. R. CIV. P. 8(a)(2)). A court considering a motion to dismiss may begin by identifying pleadings that are not entitled to the assumption of truth because they are mere conclusions.

> While legal conclusions can provide the framework of the complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Id.*

## IV. Discussion

### A. *Judge Piccione Has Absolute Judicial Immunity*

The Supreme Court has long held that judges are immune from liability for acts taken in their judicial capacity. *Stump v. Sparkman*, 435 U.S. 349, 355–56 (1972) (citing *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 347 (1872)). This immunity applies even if "the action he took was in error, was done maliciously, or was in excess of his authority." *Stump*, 435 U.S. at 356. A judge is subject to liability for judicial acts only when acting in the "'clear absence of all jurisdiction.'" *Id.* at 357 (quoting *Bradley*, 80 U.S. at 351).

Judge Piccione is presiding over the custody action in Lawrence County Common Pleas Court. The plaintiff argues that Judge Piccione is "utterly without jurisdiction over the Custody Action" because he assumed control over the case even though Senior Judge Fike had not recused himself and because he "blatantly ignored the rules of civil procedure and constitutional due process requirements." (Pl.'s Br. in Opp'n 7–8, ECF No. 37.) This argument is mistaken. For immunity to apply, a judge need only "ha[ve] jurisdiction over the subject matter before him" at the time he took the challenged action. *Stump*, 435 U.S. at 356. The Pennsylvania Courts of Common Pleas have "unlimited original jurisdiction of all actions and proceedings," 42 PA. CONS. STAT. § 931(a), a broad jurisdiction grant. *Cf. Stump*, 435 U.S. at 357.

Judge Piccione had jurisdiction over the subject matter of the custody dispute, and the actions alleged in the complaint are judicial acts. Judge Piccione is therefore absolutely immune for the actions he took in presiding over the case. This immunity is not affected by the judge's motives or the fairness of the judge's actions. *Gallas v. Supreme Court*, 211 F.3d 760, 772 (3d Cir. 2000). Nor does it matter that he is alleged to have participated in a conspiracy. *See Dennis v. Sparks*, 449 U.S. 24, 27–28 (1980) (finding that private parties conspiring with immune judge were state actors).

Because the case for judicial immunity is so clear cut, the court will grant in part the motion to dismiss filed by defendants Piccione, Hodge, and Occhibone. The claims against Judge Piccione are dismissed with prejudice.

### B. Younger *Abstention*

There is an ongoing state-court custody action, which implicates the "strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances" articulated in *Younger v. Harris*, 401 U.S. 37 (1971), and subsequent decisions. *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 431 (1982); *see Miller v. Mitchell*, 598 F.3d 139, 145 (3d Cir. 2010). *Younger* abstention is appropriate when the following requirements are met: (1) there are ongoing state proceedings that are judicial in nature, (2) the proceedings implicate important state interests, and (3) the federal plaintiff has an adequate opportunity in the state proceedings to raise constitutional challenges*. See Middlesex Cnty. Ethics Comm.*, 457 U.S. at 432; *FOCUS v. Allegheny Cnty. Ct. Com. Pl.*, 75 F.3d 834, 843 (3d Cir. 1996).

A case is considered "ongoing" so long as a party has yet to exhaust state appellate remedies. *O'Neill v. City of Phila.*, 32 F.3d 785 (3d Cir. 1994) ("'[A] necessary concomitant of *Younger* is that a party must exhaust his state appellate remedies before seeking relief in the District Court.'" (quoting *Huffman v. Pursue, Ltd.*, 420 U.S 592, 608 (1975))). The custody dispute is still pending in state court, so the first requirement of *Younger* is met.

With respect to whether the proceedings implicate important state interests, the Supreme Court of the United States held in *Moore v. Sims*, 442 U.S. 415, 435 (1979), that "[f]amily relations are a traditional area of state concern." Custody disputes pending in state court are generally matters which will trigger *Younger* abstention. *Lazaridis v. Wehmer*, 591 F.3d 666, 671 (3d Cir. 2010) (holding that *Younger* abstention was appropriate in custody dispute

7

case due to important state interests). Thus, the "important interests" requirement of *Younger* is satisfied.

With respect to the requirement that the plaintiff have adequate opportunity to raise his constitutional challenges in state court, there is no indication that the Pennsylvania state courts are an inadequate forum for raising plaintiff's constitutional claims. At the hearing on these motions, plaintiff argued he has not been afforded an adequate opportunity to raise the constitutional claims because he filed two King's Bench petitions with the Pennsylvania Supreme Court that were summarily denied. The power of the King's Bench and the similar (and often confused)[4] power of extraordinary jurisdiction under 42 PA. CONS. STAT. § 726 are "invoked sparingly." *Bd. of Revision v. City of Phila.*, 4 A.3d 610, 620 (Pa. 2010). "'[E]ven a clear showing that a petitioner is aggrieved does not assure that this Court will exercise its discretion to grant the requested relief.'" *Id.* (quoting *Phila. Newspapers, Inc. v. Jerome*, 387 A.2d 425, 494 n.11 (Pa. 1978)). The denial of a King's Bench petition or application for extraordinary jurisdiction does not impact the normally available appeal rights. Plaintiff may raise his constitutional claims in state court and has not shown that the state courts are an inadequate forum.

There are two minor exceptions to *Younger* abstention: "(1) the state proceedings are being undertaken in bad faith or for purposes of harassment or (2) some other extraordinary circumstances exist." *Lazaridis v. Wehmer*, 591

---

4   The Pennsylvania Supreme Court explains the difference as follows:

> Although employed to similar effect, our extraordinary jurisdiction is distinct from our King's Bench jurisdiction, which allows us to exercise power of general superintendency over inferior tribunals even when no matter is pending before a lower court. Where, as here, an action between the same parties regarding the same issue is pending in the . . . Court of Common Pleas, the appropriate request is for the exercise of extraordinary jurisdiction and we will treat petitioners' application as such.

*Bd. of Revision v. City of Phila.*, 4 A.3d 610, 620 (Pa. 2013).

F.3d 666, 670 n.4 (3d Cir. 2010). Neither exception applies here. The plaintiff initiated many of the state-court proceedings and no special circumstances, such as a flagrantly unconstitutional state statute, warrant interference with the state court. *See Middlesex*, 457 U.S. at 435. The court will therefore abstain.

When *Younger* applies, injunctive or declaratory relief interfering with the orders or judgments of state court is not available. *Lazaridis*, 591 F.3d at 671. Count 4, which asks the court to exercise its equitable powers to order Judge Piccione to recuse himself from the custody, divorce, and support actions or to transfer those proceedings to a different venue, is therefore dismissed. But as noted by the Third Circuit Court of Appeals, "inasmuch as appellants seek to recover damages for alleged violations of their constitutional rights . . . 'a district court, when abstaining from adjudicating a claim for injunctive relief, should stay and not dismiss accompanying claims for damages . . . when such relief is not available from the ongoing state proceedings.'" *Wattie-Bey v. Attorney General's Office*, 424 F. App'x 95, 97 (3d Cir. 2011) (quoting *Williams v. Hepting*, 844 F.2d 138, 144–145 (3d Cir. 1988)). The § 1983 claims for damages will therefore be stayed pending the outcome of the state court proceeding. In the interest of efficiency, plaintiff's state tort law claims for intentional infliction of emotional distress (Count 5) and abuse of process (Count 6) will also be stayed.

An appropriate order follows.

BY THE COURT:

/s/ Joy Flowers Conti
Joy Flowers Conti
Chief United States District Judge

Dated: October 8, 2013