IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

Kevin A. THOMAS,

    Plaintiff,

v.

Thomas M. PICCIONE, et al.,

    Defendants.

Civil Action No. 13-425

MEMORANDUM OPINION

CONTI, Chief District Judge

## I. Introduction

Plaintiff Kevin Thomas ("plaintiff") brought this civil rights action against Holly Thomas, plaintiff's estranged wife; John and Dolores DiCola, the parents of Holly Thomas; Norman Barilla, Holly Thomas's attorney; two judges on the Court of Common Pleas of Lawrence County, Pennsylvania, Thomas Piccione ("Judge Piccione") and John Hodge ("Judge Hodge"); and Michael Occhibone, a court administrator (with Judges Piccione and Hodge, the "judicial defendants"). Plaintiff asserted that Holly Thomas and her parents conspired with the judicial defendants to deprive him of due process in a child-custody action between plaintiff and Holly Thomas pending before Judge Piccione. Plaintiff requested that the court award damages and order Judge Piccione to recuse himself from the underlying state action or transfer it to a different venue.

The court issued a memorandum opinion (ECF No. 58) dismissing the claims against Judge Piccione due to absolute judicial immunity. The court abstained and dismissed plaintiff's claims for equitable relief under the principles articulated by the Supreme Court in *Younger v. Harris*, 401 U.S. 37 (1971), and its progeny and stayed plaintiff's federal claims for damages and claims under state law until the conclusion of the underlying state litigation. (ECF No. 58, at 9.) In large part, the

court based its decision to abstain upon the three conditions identified by the Supreme Court in *Middlesex County Ethics Commission v. Garden State Bar Association*, 457 U.S. 423 (1982). (*Id.* at 7.)

On November 6, 2013, plaintiff filed a motion (ECF No. 61) for reconsideration of the dismissal of equitable claims and stay of damage claims pursuant to *Younger*.[1] On December 10, 2013, the Supreme Court issued an opinion in *Sprint Communications, Inc. v. Jacobs*, 134 S. Ct. 584 (2013), addressing *Younger* abstention. The court asked the parties to submit supplemental briefs addressing the import of *Sprint*. In light of *Sprint*, the court modifies its previous opinion, which did not apply the correct standard for abstention. After applying the standard as clarified by *Sprint*, the court concludes that abstention is still appropriate. Plaintiff's motion for reconsideration will be denied.

## II. Standard of Review

The court may grant a motion for reconsideration if the party seeking reconsideration establishes one of the following grounds: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion for summary judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Max's Seafood Cafe v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999). Because of the interest in finality, motions for reconsideration should be granted sparingly; the parties are not free to relitigate issues the court has already decided. *Rottmund v. Cont'l Assurance Co.*,

---

1   Plaintiff did not seek reconsideration of the dismissal of the claims against Judge Piccione or of the stay of the related state claims. (ECF No. 61, ¶ 3.)

> Plaintiff is not asking the Court to preside over the custody case. Plaintiff merely seeks an opportunity to prove that his factual allegations of bias and lack of due process are well-founded and that Judge Piccione should be removed from the case, and that the case should proceed before an unbiased judge who is not from Lawrence County.

(ECF No. 62, at 8.)

813 F. Supp. 1104, 1107 (E.D. Pa. 1992). "[A] motion for reconsideration is not properly grounded in a request for a district court to rethink a decision it, has already made, rightly or wrongly." *Williams v. City of Pittsburgh*, 32 F. Supp. 2d 236, 238 (W.D. Pa. 1998).

## III. Dicussion

### A. Scope of Younger Abstention

In *Younger*, the Supreme Court held that federal courts may not enjoin pending state court criminal prosecutions absent special circumstances such as bad faith or harassment. *Younger*, 401 U.S. at 41, 54. In *Huffman v. Pursue, Ltd.*, 420 U.S. 592 (1975), the Court expanded the abstention doctrine to civil nuisance proceedings. The Court reasoned that the nuisance proceeding at issue in *Huffman*, to which the state was a party, was "in important respects … more akin to a criminal prosecution than are most civil cases." *Id.* at 604. The Court later expanded *Younger* to civil cases in which a state is not a party, but which involve the authority of the state judicial system to enforce its orders and judgments. *Juidice v. Vail*, 430 U.S. 327, 336 n.12 (1976) (applying *Younger* to challenges to civil contempt orders); *Pennzoil Co. v. Texaco Inc.*, 481 U.S. 1, 13–14 (1897) (applying *Younger* to a challenge to the execution of a civil judgment pending appeal). In *New Orleans Public Service, Inc. v. Council*, 491 U.S. 350 (1989) (*"NOPSI"*), the Court explained that that *Younger* was not generally applicable to all cases that involve parallel state and federal proceedings. *Id.* at 361. The Court noted that it had only extended *Younger* to state criminal prosecutions, civil enforcement proceedings, and "civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions." *Id.* Abstention is limited to such "exceptional circumstances." *Id.*

3

In *Middlesex*, the Court addressed the applicability of *Younger* abstention to state bar administrative proceedings. *Middlesex*, 457 U.S. at 425. The Court set out three factors in considering this question:

> *first*, do state bar disciplinary hearings … constitute an ongoing state judicial proceeding; *second*, do the proceedings implicate important state interests; and *third*, is there an adequate opportunity in the state proceedings to raise constitutional challenges.

*Id.* at 432. Many courts "strictly and mechanically applied the three-part test from *Middlesex*, while largely ignoring the limitations imposed by *NOPSI*." *ACRA Turf Club, LLC v. Zanzuccki*, No. 13-3064, 2014 WL 1272859, at *6 & n.7 (3d Cir. Mar. 31, 2014).

In *Sprint*, the Supreme Court clarified that this mechanical approach attributed *Middlesex* with "extraordinary breadth" and conflicted with the Court's "dominant instruction" that "abstention from the exercise of federal jurisdiction is the 'exception, not the rule.'" *Sprint*, 134 S. Ct. at 593 (quoting *Hawaii Hous. Auth. v. Midkiff*, 467 U.S. 299, 236 (1984)). The state bar ethics proceeding in *Middlesex* was akin to a criminal proceeding. *Id.* "Divorced from their quasi-criminal context, the three *Middlesex* conditions would extend *Younger* to virtually all parallel state and federal proceedings, at least where a party could identify a plausibly important state interest." *Id.* "The three *Middlesex* conditions … were not dispositive; they were, instead, *additional* factors appropriately considered by the federal court before invoking *Younger*." *Id.* The scope of *Younger* abstention is limited to "the three 'exceptional circumstances' identified in *NOPSI*." *Id.* at 594.

### B. *Application of* Sprint *and* Younger *to the Case at Bar*

In the memorandum opinion dated October 9, 2013, the court abstained after reviewing the "*Middlesex* conditions." In light of *Sprint*, performing this analysis without considering the limited categories of cases to which *Younger* can apply is clear error. The court therefore considers whether this case falls into one of the

exceptional categories identified in *NOPSI* and *Sprint*. The underlying state action is neither criminal in nature nor a civil enforcement proceeding. The question, therefore, is whether the state action is a "'civil proceeding[] involving certain orders … uniquely in furtherance of the state court['s] ability to perform [its] judicial functions.'" *Sprint*, 134 S. Ct. at 591 (quoting *NOPSI*, 491 U.S. at 368). The court concludes that it is.

Federal courts routinely abstained under *Younger* when litigants asked a federal court to order a state court judge to recuse. *See Shafizadeh v. Bowles*, 476 F. App'x 71, 73 (6th Cir. 2012) (affirming, on *Younger* abstention grounds, district court's dismissal of complaint seeking an injunction directing state-court judge to recuse himself); *Chalupowski v. Berry*, 151 F. App'x 1, 1 (1st Cir. 2005) ("Appellants asked the federal court to order the defendant, a state court appellate judge before whom a motion for contempt was then the only pending matter, to recuse herself 'from further hearing in this matter.' This the court could not do." (citing *Juidice*, 430 U.S. at 335)); *H.C. ex rel. Gordon v. Koppel*, 203 F.3d 610, 613 (9th Cir. 2000) (holding that *Younger* abstention applied where plaintiffs sought "wholesale federal intervention into an ongoing state domestic dispute" similar in nature to the custody dispute in this case); *see also Anthony v. Council*, 316 F.3d 412 (3d Cir. 2003) (affirming decision to abstain under *Younger* in a case challenging New Jersey Superior Court Judges' administration of child support cases); *Mann v. Conlin*, 22 F.3d 100, 105–06 (6th Cir. 1994) (affirming district court's dismissal of claims for injunctive and declaratory relief against state-court judge arising out of pending domestic relations cases). All these cases were decided before *Sprint*, and they all relied heavily on the "*Middlesex* conditions."

The court was unable to find case law discussing whether this kind of case—a plaintiff seeking an order commanding a state court judge to recuse himself or transfer venue—falls into the third exceptional category identified in *NOPSI* and *Sprint*. The court must therefore reason by analogy to the two Supreme Court cases

5

that discuss the "unique breed of *Younger* abstention" involved in the third category, *Juidice* and *Pennzoil*. *ACRA Turf Club*, 2014 WL 1272859, at *7 n.8.

*Juidice* involved a constitutional challenge to civil contempt orders issued by a state court. The state court entered a default judgment against the defendant in the underlying state litigation, Harry Vail ("Vail"). *Juidice*, 430 U.S at 327. Vail subsequently failed to attend a deposition regarding satisfaction of the judgment. *Id.* The court found him in contempt after he did not appear at a contempt hearing, and after he failed to pay his fine, Vail was jailed for a day. *Id.* at 329–29. Vail, on behalf of a class of individuals subject to contempt proceedings in state court, sued the state-court judges in federal district court, seeking to enjoin the use of civil contempt procedures authorized by state law. *Id.* at 330. The Supreme Court held that the district court should have abstained under *Younger*:

> A State's interest in the contempt process, through which it vindicates the regular operation of its judicial system, so long as that system itself affords the opportunity to pursue federal claims within it, is surely an important interest. Perhaps it is not quite as important as is the State's interest in the enforcement of its criminal laws, *Younger*, or even its interest in the maintenance of a quasi-criminal proceeding such as was involved in *Huffman*. But we think it is of sufficiently great import to require application of the principles of those cases. The contempt power lies at the core of the administration of a State's judicial system.

*Id.* at 335 (citations omitted). Because of this important interest, and because the federal plaintiffs had an opportunity to raise their federal claims in state court, abstention was appropriate. *Id.* at 337.

The underlying proceeding in *Pennzoil* was a tortious interference case between Pennzoil and Texaco in the state courts of Texas. A jury awarded Pennzoil more than $10 billion in damages. *Pennzoil*, 481 U.S. at 4. Texaco planned to appeal, but in order to prevent Pennzoil from executing on the judgment during the pendency of the appeal, Texaco needed to post a bond of more than $13 billion—a financial

6

impossibility for the company. *Id.* at 5. Texaco filed a federal lawsuit (in the Southern District of New York) challenging both the judgment and the appeal of bond requirements of Texas law. *Id.* at 6 & n.6. The district court enjoined Pennzoil from attempting to obtain a judgment lien and the court of appeals affirmed. *Id.* at 8–9.

The Supreme Court reversed, holding that the issuance of the injunction was an "unprecedented intrusion into the Texas judicial system." *Id.* at 10. *Younger* abstention is required "not only when the pending state proceedings are criminal, but also when certain civil proceedings are pending, if the State's interests in the proceeding are so important that exercise of the federal judicial power would disregard the comity between the States and the National Government." *Id.* at 11. Texaco's challenge to the Texas bond and lien requirements was sufficiently important to justify abstention because, like *Juidice*, it involved a "process[] by which the State compels compliance with the judgments of its courts." *Id.* at 13.

States' judicial *process* and judicial *authority* are the touchstones of *Pennzoil* and *Juidice*. *See id.* at 14 & n.12 ("Our opinion does not hold that *Younger* abstention is always appropriate whenever a civil proceeding is pending in a state court. Rather, as in *Juidice*, we rely on the State's interest in protecting 'the authority of the judicial system, so that its orders and judgments are not rendered nugatory.'" (citing *Juidice*, 430 U.S. at 336 n.12)). The Court subsequently framed these cases as "civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions." *NOPSI*, 491 U.S. at 368; *Sprint*, 134 S. Ct. at 588.

In asking this court to order the recusal of Judge Piccione, plaintiff indirectly challenges Pennsylvania courts' process for judicial recusals. In Pennsylvania, a party seeking to disqualify a judge must assert "'the bias, prejudice or unfairness necessitating recusal'" in a "'plea of prejudice.'" *Reilly by Reilly v. Se. Pa. Transp. Auth.*, 489 A.2d 1291, 1299 (Pa. 1985) (quoting *In re Crawford's Estate*, 160 A. 585, 587 (Pa. 1931)). That party should address the plea of prejudice to the judge before

7

whom the proceedings are pending. *Id.* Once the judge makes a decision, "it is final and the case must proceed." *Id.* at 1300. This process allows the judge to state the reasons for granting or denying the motion and "to develop a record on the matter." *Commonwealth v. Whitmore*, 912 A.2d 827, 833 (Pa. 2006). The process is also essential "'for the security of the bench and successful administration of justice.'" *Reilly*, 489 A.2d at 1299 (quoting *In re Crawford's Estate*, 160 A. at 587). If trial judges' recusal decisions were not final,

> "unfounded and ofttimes malicious charges made during the trial by bold and unscrupulous advocates might be fatal to a cause, or litigation might be unfairly and improperly held up awaiting the decision of such a question or the assignment of another judge to try the case. If lightly countenanced, such practice might be resorted to, thereby tending to discredit the judicial system."

*Id.* (quoting *In re Crawford's Estate*, 160 A. at 587). The trial court's decision on recusal is preserved "as any other assignment of error" and reviewed for abuse of discretion. *Id.* at 1300.

Pennsylvania has an important interest in protecting the authority and judicial functions of its court, including the recusal process. For this court to interpose itself in Pennsylvania's recusal process would be as inappropriate as federal intervention in a state's civil contempt process, *Juidice*, 430 U.S. at 336, or a state's process for enforcing judgments, *Pennzoil*, 481 U.S. at 14. For this reason, this case involves the authority of the state court to conduct its judicial function—the third exceptional category recognized by *NOPSI* and *Sprint*.

The "additional factors" found in *Middlesex* also support abstention. The state proceeding is ongoing, implicates important state interests, and affords plaintiff an adequate opportunity to raise his constitutional claims. As the court wrote in the opinion of October 9, 2013,

> [a] case is considered "ongoing" so long as a party has yet to exhaust state appellate remedies. *O'Neill v. City of Phila.*, 32

8

> F.3d 785 (3d Cir. 1994) ("'[A] necessary concomitant of *Younger* is that a party must exhaust his state appellate remedies before seeking relief in the District Court.'" (quoting *Huffman v. Pursue, Ltd.*, 420 U.S 592, 608 (1975))). The custody dispute is still pending in state court, so the first requirement of *Younger* is met.
>
> With respect to whether the proceedings implicate important state interests, the Supreme Court of the United States held in *Moore v. Sims*, 442 U.S. 415, 435 (1979), that "[f]amily relations are a traditional area of state concern." . . . .
>
> With respect to the requirement that the plaintiff have adequate opportunity to raise his constitutional challenges in state court, there is no indication that the Pennsylvania state courts are an inadequate forum for raising plaintiff's constitutional claims.

(ECF No. 58, at 7–8.) Plaintiff's proper avenue for redress is to appeal the recusal decision of the state trial judge within the state judicial system and, ultimately, to the Supreme Court.[2]

*Sprint* refocuses the scope of abstention under *Younger* and directs the court to analyze the three exceptional categories it identified. This case involves one of those categories and abstention is appropriate. Federal courts have repeatedly abstained when asked to order the recusal of a state court judge. The court does not understand *Sprint* to require district courts to hear these kinds of cases and issue these kinds of mandatory injunctions. Nothing could be further from the principle of comity that underpins the *Younger* doctrine. *Sprint*, 134 S. Ct. at 591; *Pennzoil*, 481 U.S. at 11.

Plaintiff cites *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868 (2009), for the proposition that federal courts have the authority to decide whether a state court

---

2   Plaintiff appears to have done just that. Plaintiff filed a notice of appeal with the Superior Court of Pennsylvania on October 30, 2013, shortly before moving for reconsideration in this case, and argument on that appeal was held on March 5, 2014. *See K.T. v. H.T.*, No. 1732 WDA 2013 (Pa. Super. Ct.) (appeal docket sheet).

9

judge's refusal to recuse violates the Due Process Clause. (ECF No. 62, at 8–9.) In *Caperton*, however, the Supreme Court exercised its appellate authority over a final judgment of the Supreme Court of West Virginia. *Caperton* did not involve an ongoing state proceeding, which is the issue before the court. The decisions cited in *Caperton* in which the Supreme Court recognized a due process basis for requiring the recusal of a judge also came before the Court on appeal from or certiorari to the highest state court. *See Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813 (1986) (Supreme Court of Alabama); *Mayberry v. Pennsylvania*, 400 U.S. 455 (1971) (Supreme Court of Pennsylvania); *Ungar v. Sarafite*, 376 U.S. 575 (1964) (Court of Appeals of New York); *In re Murchison*, 349 U.S. 133 (1955) (Supreme Court of Michigan); *Tumey v. Ohio*, 273 U.S. 510 (1926) (Supreme Court of Ohio). None of those cases involved parallel state and federal proceedings. Plaintiff may pursue review of Judge Piccione's recusal decision by following the state appellate process and seeking review by the Supreme Court.[3]

Plaintiff also cited *Fieger v. Ferry*, 471 F.3d 637 (6th Cir. 2008), but it is similarly inapposite because it involved challenges to recusal decisions and the state recusal rule raised after the state court proceeding had ended, and therefore the Court of Appeals for the Sixth Circuit analyzed the *Rooker–Feldman* doctrine rather than *Younger*.[4] In this case, plaintiff did not challenge to the state's recusal rule, only how the rule was applied in the state trial court.

---

3   Plaintiff's "accompanying" claims for damages (counts 1–3) are stayed rather than dismissed because, unlike the relief sought in the recusal count, damages are not available in the ongoing state proceeding. *Williams v. Hepting*, 844 F.2d 138, 144–45 (3d Cir. 1988). Plaintiff's state-law claims (counts 5–6) also remain stayed because plaintiff did not raise this issue in his motion for reconsideration. *See supra* footnote 1.

4   In a related case filed during the pendency of the state-court action, the Court of Appeals for the Sixth Circuit affirmed the district court's dismissal on *Younger* and collateral estoppel grounds. *Gilbert v. Ferry*, 413 F.3d 578, 579 (6th Cir. 2005) (per curiam).

## IV. Conclusion

After reconsideration in light of *Sprint*, the court modifies its opinion (ECF No. 58) as set forth above. As abstention is still warranted, the court's order (ECF No. 59) dismissing the claims against Judge Piccione, abstaining and dismissing the equitable relief claims, and staying the remainder of the case remains in effect. Plaintiff's motion for reconsideration is therefore denied. An appropriate order will follow.

Dated: April 24, 2014   /s/ Joy Flowers Conti
Joy Flowers Conti
Chief United States District Judge